# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARREN LAMAR BERRYMAN,<br><br>                              Petitioner,<br>vs.<br><br>ANTHONY HEDGPETH, WARDEN,<br><br>                              Respondent. | CASE NO. 09cv2015-WQH (WMc)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DENIAL OF HABEAS CORPUS PETITION**<br><br>**[DOC. NO. 14]** |

## I.
## INTRODUCTION

This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b) and Local Civil Rule H.C.2 of the United States District Court for the Southern District of California. After reviewing the Petition [Doc. No. 1], Respondent's Answer and Memorandum of Points and Authorities in support thereof ("Answer") [Doc. No. 14], as well as careful consideration of Petitioner's Traverse [Doc. No. 16], in addition to all of the supporting documents submitted by the parties, the Court recommends that the Petition be **DENIED** for the reasons stated below.

///
///
///

## II.

## **FEDERAL PROCEDURAL HISTORY**

On September 14, 2009 Warren Lamar Berryman, ("Petitioner"), a California state prisoner, filed a Petition for Writ of Habeas Corpus ("Pet.") by a Person in Custody pursuant to 28 U.S.C. § 2254. [Doc. No. 1.]   On November 9, 2009, Respondent Anthony Hedgpeth ("Respondent") filed a Motion to Dismiss. [Doc. No. 6.] On March 5, 2010, Magistrate Judge McCurine issued a Report and Recommendation to grant in part and deny in part the Motion to Dismiss. [Doc. No. 10.] On May 20, 2010, the District Court adopted the Report and Recommendation in its entirety and Respondent was ordered to answer Claims Five and Six, the two remaining operative claims in the Petition.  [Doc. Nos. 11-12.]  Specifically, Ground Five of the Petition alleges: "Petitioner was denied his 6th Amendment right to the effective assistance of counsel at trial and on direct appeal." [Doc. No. 1 at pp.45-51.]  Ground Six of the Petition alleges: "The trial court erred reversibly in failing to sua sponte instruct the jury that the Robles Brothers and Jessica Martinez were accomplices as a matter of law." [Doc. No. 1 at pp. 52-54.] On August 26, 2010, Respondent filed an Answer as ordered by the Honorable William W. Hayes. [Doc. No. 14.]  On September 22, 2010, Petitioner filed his Traverse. [Doc. No. 16.]

## III.

## **STATEMENT OF FACTS**

Title 28, United States Code, section 2254, subsection (e)(1) provides:  "[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see also Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc) *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997) (stating that federal courts are required to "give great deference to the state court's factual findings.") Accordingly, the following facts are taken from the California Court of Appeal's opinion:

**FACTUAL AND PROCEDURAL BACKGROUND**

    **1. Statement of the Case**

    Berryman and the Robles brothers were all charged with premeditated murder,

kidnapping for murder, false imprisonment by violence and assault by means of force likely to produce great bodily injury. Cesar pleaded guilty to voluntary manslaughter and received a one-year sentence in county jail. Ernesto pleaded guilty to being an accessory after the fact and spent less than 30 days in jail.

Berryman proceeded to trial on an amended information that dropped the false imprisonment charge and reduced the kidnapping charge to simple kidnapping with a great bodily injury enhancement. A jury found Berryman guilty on all counts and found true the allegation that he had inflicted great bodily injury during the kidnapping. After denying his new trial motion, the trial court sentenced Berryman to an indeterminate term of 25 years to life for murder, with an additional eight years for the kidnapping and its enhancement and stayed a three-year term for the assault. Berryman timely appealed.

**II. Testimony of the Three Witnesses**

Martinez testified that she had dated Berryman off and on for five years. She claimed that Berryman was verbally and physically abusive and described an incident where he grabbed her arm and hair, telling her "not to push his buttons[.]" On another occasion, Martinez reported to the police after he left recorded telephone messages threatening to beat her up. Despite these incidents, Martinez stayed with Berryman because she felt sorry for him.

The Robles brothers were friends of Medina and Berryman and Ernesto often purchased marijuana from Berryman. Medina shared an apartment with Cesar's girlfriend, Cindy Camarena, but Cesar got along well with him and learned a lot from him about caring for Camarena's children. Cesar also testified that Medina and Berryman both sold drugs and that Medina was a heavy methamphetamine user.

About a week before Medina's murder, Berryman asked Cesar to hide some marijuana because he did not want it in his car. Cesar put the marijuana in a backpack and threw it in Camarena's backyard. Camarena, Ernesto, Medina and Medina's girlfriend all knew about the marijuana. The marijuana was gone the following morning and Berryman was convinced that Medina had stolen it, but also blamed Cesar for the loss. Not knowing what else to do, Cesar paid Berryman about $200 for the drugs because someone had harassed Berryman for money and threatened him with a shotgun. Ernesto also gave Berryman money because he felt bad about the missing marijuana.

On January 20, 2004, Martinez telephoned Berryman because the "check engine" light in her car was on and they met that evening at the Robles brothers' automobile shop. After arguing about whether they would continue to date, Berryman told Martinez they would discuss the matter later that evening and made her wait inside an R.V. at the repair shop because he needed to pick up a friend to talk about "business." Berryman left with the Robles brothers at about 7:15 p.m. and took Martinez's car keys to ensure her compliance. The three men then went to Camarena's home to get beer.

The Robles brothers similarly testified that Berryman stopped by the repair shop where they worked, that they left the shop and found Martinez waiting for them when they returned. In exchange for looking at Martinez's car, Berryman told Ernesto to take the speakers out of the trunk of Martinez's car and keep them. After looking at the car, Cesar went to Napa Auto Parts to price some parts and also to purchase duct tape and rope for Berryman. Cesar did not remember making any comments to the store clerk and gave the items to Berryman without asking what they were for.

In accordance with Berryman's earlier instructions, Martinez telephoned him after the Robles brothers' parents left the repair shop. About 20 minutes later, Berryman returned to the R.V. with Medina and the Robles brothers; Cesar introduced Medina to Martinez and Medina and Berryman smoked some methamphetamine.

Cesar testified that Medina and Berryman talked about their cell phones and swapped phones and that Medina told everyone he had made and spent a lot of money that day. Berryman got angry and attacked Medina just as he started pushing buttons on Berryman's phone. Ernesto similarly testified that Berryman attacked Medina and repeatedly asked Medina for his money. When Medina told Berryman that he would be paid, Ernesto believed Medina was talking about drugs.

After Berryman hit Medina in the head and asked for his money, he had Cesar tape Medina's ankles and hands, but Cesar testified he made sure the tape was not too tight so that Medina could escape. Although Medina was not bleeding, when Berryman hit him again, he shook "like a fish out of water." Martinez described the attack as "sudden," claimed she was scared and started crying as she had never seen this side of Berryman before. Martinez also observed Medina's entire body shaking as if he were having a seizure and told Berryman to stop the beating. Berryman instructed her to stop crying and go outside where she noticed that her car had been backed toward the R.V. Fearing for her life, she complied with Berryman's demand to back the car until it was three or four feet away from the R.V.

Cesar admitted that he helped Berryman pull Medina out of the R.V. and put him inside Martinez's trunk and that Medina hit his head on the ground. Martinez also testified that Berryman and Cesar placed Medina, who had been bound at the wrists and ankles with duct tape, inside the trunk, but that Medina hit his head in the trunk. Ernesto testified, however, that Berryman acted alone when he threw Medina out of the R.V. and placed him inside the trunk and that Medina hit his head on the ground and in the trunk. Ernesto also stated that Medina was conscious after the attack, but he could not tell whether Medina was bleeding.

Berryman moved the car onto the street and told Martinez to not do anything stupid when a police car drove by. He then instructed Cesar to get inside Martinez's car and said he would follow in the truck with Ernesto. As they drove, Berryman talked to Ernesto about getting "rid" of Medina. In the meantime, Martinez pleaded with Cesar to let Medina go, but he told her to be quiet. She then passed the other vehicle and parked, just as Medina pushed the back seats forward and burst out of the trunk. Martinez stopped the car and jumped out while Cesar scuffled with Medina inside the car until Berryman arrived to subdue Medina. Although Martinez saw a car approach, the Robles brothers pushed her inside her car and she did not try to signal the vehicle because she feared for her life. After Martinez complied with the Robles brothers' instructions to get inside Ernesto's truck, Berryman drove Cesar and Medina away in her car.

Cesar testified that Berryman drove to a canal and got out of the car, giving Medina an opportunity to take control of the vehicle. Cesar struggled with Medina for control until the car got stuck. Berryman jumped on Medina after he got out of the car and rendered him unconscious. Cesar helped drag Medina to a level surface, took off Medina's shirt and tried to check his pulse. Berryman then took off Medina's pants pulled him to the canal and flipped him into the water. After the current took the body away, they collected Medina's clothes and drove to his cousin's house, where Ernesto and Martinez met them.

Cesar took Medina's clothes inside the house and told his family members that he had robbed someone so they would remember that day. He doused the clothes with lighter fluid, but did not have anything to ignite them and threw the clothing into the trash. Berryman told Martinez to go home, clean her car, sleep and not tell anyone what happened. After Martinez left, the three men returned to Camarena's home and agreed to tell her that they had left Medina at a liquor store.

When Berryman left with Medina and Cesar, Ernesto and Martinez drove around until they saw her car drive by. Ernesto followed the car to his cousin's house, saw Cesar get out and Berryman throw items into a dumpster. Berryman later told the Robles brothers that they should never say anything about what had happened and if he got in trouble for murder they would also be in trouble.

Martinez told her mother about the events, but her mother advised her not to do anything, hoping Medina would be found unharmed. The following day, Berryman told Martinez that nothing had happened and she had better not "snitch" or all "four of us would go down." Martinez contacted the police after reading in the newspaper that Medina's body had been found.

## III. Additional Evidence

Camarena confirmed that on January 20, 2004, Berryman, Medina and the Robles brothers left her apartment to get beer. Even later that evening, Berryman and the Robles brothers returned to the apartment without Medina. On the night of the murder, Ruby Mendivel received a telephone call from Medina between 8:00 p.m. and 8:30 p.m. She heard him state: "I swear, I swear I will get your money" and "Look at me I'm bleeding. My nose is broken." Mendivel thought someone was playing with the phone and hung up, not realizing that the call had not disconnected. Telephone records confirmed that Mendivel received a phone call from Berryman's cell phone at about 9:07 p.m. that lasted 32 minutes.

Albert Martinez worked at Napa Auto Parts and sold Cesar a roll of duct tape and some rope on the night of the murder. He testified that Cesar told him that he intended to tie up someone who had not paid for work done at his auto shop.

While investigating a residential burglary, Imperial County Police Sergeant Sean Acuna learned that Berryman possessed a stolen shotgun. Sergeant Acuna went to Berryman's house looking for the shotgun, received permission to enter and saw marijuana. Sergeant Acuna arrested Berryman for possession and sale of marijuana on January 13 ( a week before the murder) and confiscated about 971 grams of marijuana from Berryman's home. Marijuana packaged in 7 gram increments could be purchased on the street for $300. After Sergeant Acuna arrested Berryman for possession and sale of marijuana, Berryman waived his Miranda rights and told Sergeant Acuna that he had stolen marijuana from another person and this individual wanted money from him. (Miranda v. Arizona (1966) 384 U.S. 436).

Police recovered Medina's body from a canal clothed only in a pair of underwear. An autopsy revealed a chin laceration, bruises on his left arm consistent with being held and a very large bruise on the top of his head. A pathologist determined that Medina drowned and that he had methamphetamine, morphine and alcohol in his system that may have contributed to his demise. The nature of the injuries suggested a homicide.

[*See* Lodgment 6 at pp. 3-6.]

///

## IV.

## **STANDARD OF REVIEW**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. Under 28 U.S.C. § 2254, subsection (d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**A.   Clearly Established Federal Law**

When determining what constitutes "clearly established federal law" under section 2254(d)(1), federal courts look to United States Supreme Court holdings at the time of the state court's decision. *Locklyer v. Andrade,* 538 U.S. 63, 71-72 (2003). A state court's decision is "contrary to" clearly established United States Supreme Court precedent if (1) the state court applies a rule different from the governing law set forth in Supreme Court cases, or (2) the state court confronts a set of facts that are materially indistinguishable from a Supreme Court case, but still reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06, 412 (2000); *Lockyer v.*

*Andrade*, 538 U.S. 63, 73 (2003); *Clark v. Murphy,* 331 F. 3d 1062, 1067 (9th Cir. 2003). A state court decision does not have to cite to or even demonstrate an awareness of clearly established Supreme Court precedent, so long as neither the reasoning nor the result of the state court decision contradict such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002).

**B.      Unreasonable Application of Federal Precedent**

A state court decision may involve an "unreasonable application" of Supreme Court precedent, "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08. Alternatively, an unreasonable application may be found, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Clark*, 331 F.3d at 1067. An unreasonable application of federal law requires the state court decision to be more than incorrect or erroneous. *Lockyer*, 538 U.S. at 75-76. Instead, the state court's application must be "objectively unreasonable." *Id.* at 76.

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state-court decision. *Ylst v. Nunnermaker*, 501 U.S. 797, 801-06 (1991); *Van Lynn v. Farmon*, 347 F.3d 735 (9th Cir. 2003). However, if the dispositive state court order does not "furnish a basis for its reasoning," the federal court considering the habeas petition must conduct an independent review of the record to determine whether the state court unreasonably applied controlling federal law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

///
///
///
///
///

# V.
# DISCUSSION

## A. Claim Five - Ineffective Assistance of Counsel

### 1. Petitioner's Arguments

Petitioner argues his attorney rendered ineffective assistance in violation of the Sixth Amendment by failing to object to the "prosecution's motions to limit defense cross-examination in the conditions of the prosecution's witnesses [J. Martinez, C. Robles, E. Robles] plea-agreements." [Traverse, Doc. No. 16 at 14; *see also* Claim Five of Petition, Doc. No. 1 at 45.]

Petitioner also contends his Sixth Amendment rights were violated when defense counsel failed to file a motion to exclude the Robles brothers' allegedly coerced statements to police at trial. [Traverse, Doc. No. 16 at 7, *see also* Doc. No. 1 at 47.]

### 2. Respondent's Opposition

Respondent contends Petitioner's claim is inaccurate in that defense counsel did indeed object to a prosecution motion to exclude the mention of the Robles brothers' *sentences*, which was the issue at hand, not the Robles brothers' plea agreements. Further, Respondent asserts defense counsel asked several questions on cross-examination about the extent of the Robles brothers' plea agreements in an effort to attack the value of their credibility as witnesses. [Resp. Motion, Doc. No. 14-1 at 9:15-20.] Respondent contends the record demonstrates Petitioner cannot meet either prong of the two-part test for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

With respect to Petitioner's objection to the use at trial of the Robles brothers allegedly coerced statements, Respondent contends Petitioner cannot show deficient performance or prejudice as required by *Strickland* because both the prosecution and defense made use of the Robles' brothers statements and those statements were corroborated by other evidence. [Resp. Motion, Doc. No. 14-1 at 16:4-17.]

### 3. Clearly Established Federal Law - *Strickland v. Washington*, 466 U.S. 668 (1984)

In *Strickland,* the United States Supreme Court set forth a two-part test for ineffective assistance of counsel claims as follows: (1) a defendant must show counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Strickland v.*

1  *Washington*, 466 U.S. 668, 689 (1984). The factors need not be addressed in any particular
2  order; if an issue can be "disposed on ground of lack of sufficient prejudice, [there is] no need to
3  turn to counsel's performance." *Id.* at 697.

4      To show counsel's performance was deficient, the defendant "must show counsel's
5  representation fell below an objective standard of reasonableness" under prevailing professional
6  norms. *Id.* at 688. Judicial scrutiny of counsel's performance "must be highly deferential" and
7  "requires every effort be made to eliminate the distorting effects of hindsight, to reconstruct the
8  circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's
9  perspective at the time." *Id.* at 689.

10      To show prejudice, "a defendant must show that there is a reasonable probability that, but
11  for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*
12  at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside
13  the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.
14  "The assessment of prejudice should proceed on the assumption that the decision maker is
15  reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id.*
16  at 695.

17      Petitioner's ineffective assistance of counsel claim was not raised until the California
18  Supreme Court petition for writ of habeas corpus was filed. Consequently, it was not addressed
19  by the Court of Appeal on direct review or in the appeals court's reasoned decision rejecting
20  Petitioner's third writ of habeas corpus. [Lodgment 13.] However, the California Supreme
21  Court issued a silent denial of Petitioner's ineffective assistance of counsel claim. [Lodgment
22  14.] Such silent denials are considered decisions on the merits. *Hunter v. Aispuro*, 982 F.2d
23  344, 347-48 (9th Cir. 1992). Accordingly, under the AEDPA, the Court "perform[s] an
24  'independent review of the record' to ascertain whether the state court decision was objectively
25  unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) (*quoting Delgado v.*
26  *Lewis*, 223 F.3d 976, 982 (9th Cir. 2000)).

27  ///
28  ///

### 4. The California Supreme Court's Decision Was Not Contrary to Clearly Established Federal Law, Nor an Unreasonable Application of Federal Law

This Court's review of the record demonstrates the California Supreme Court's denial of Petitioner's ineffective assistance of counsel claim was in line with clearly established federal law and a reasonable application of that law. From this Court's consideration of the record, it has not been shown that counsel's representation fell below an objective standard of reasonableness as required by *Strickland.*

### a.) Counsel's Alleged Failure to Object to the Prosecution's Motion *In Limine*

Petitioner argues the Sixth Amendment was violated by his counsel's alleged failure to object to the trial court's order not to discuss the length of sentences received by prosecution witnesses under their plea agreements. Petitioner's allegations, however, are contradicted by the record. The trial transcript indicates Petitioner's counsel did object to the prosecution's motion *in limine* to exclude comment regarding the length of the Robles' brothers' sentences. Additionally, defense counsel argued extensively and somewhat successfully against the motion *in limine*. After receiving argument from both parties, the trial court's ruling amounted to only a partial grant of the People's motion *in limine* by allowing full discussion of the Robles brothers' plea agreements, but only prohibiting mention of the actual penalty associated with the charges the Robles brothers faced before the plea deal was struck. *See* Lodgment 2, Reporter's Appeal Transcript at 26:1-17. Specifically, the Court stated:

> "It seems to me – and I'll give counsel an opportunity to argue this point – the way that this can be handled is sort of half a loaf that doesn't satisfy either party. And that would be that you would be entitled to not only inquire of the Robleses what their plea was, what they pled guilty to, that Ernesto pled to accessory after the fact, and Cesar to voluntary manslaughter, but you would also be entitled to inquire as to what they got because that was apparently part of the deal, but that you would be required to couch your comparison language like this, 'And you got that rather than the penalty associated with first-degree murder.' You would not be entitled to use the term 'life imprisonment' or anything that directly relates to punishment. In other words you would simply say that the penalty is associated with first-degree murder. In other words, 'You avoided a plea to first-degree murder by pleading to accessory-after-the-fact and voluntary manslaughter.'

*Id.*

During trial, defense counsel continued to provide reasonable and proficient representation to Petitioner by thoroughly cross-examining the Robles brothers about the terms

1  and details of their plea agreements. *See* Lodgment 2, Reporter's Appeal Transcript at 402:20-
2  411:2; 687;-695:13.  *See Williams v. Woodford*, 384 F.3d 567, 597 (9th Cir.2004) (citing *Giglio*
3  *v. United States*, 405 U.S. 150, 154-55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (explaining federal
4  law requires the prosecution to "disclose to the defense a government agreement with a witness
5  that may motivate the witness to testify and may affect the outcome of trial."); *see also Allen v.*
6  *Woodford*, 395 F.3d 979, 995 (9th Cir.2005) (quoting *United States v. Yarbrough*, 852 F.2d
7  1522, 1537 (9th Cir.1988) (noting "[a]n agreement that requires a witness to testify truthfully in
8  exchange for a plea is proper so long as 'the jury is informed of the exact nature of the
9  agreement, defense counsel is permitted to cross-examine the accomplice about the agreement,
10 and the jury is instructed to weigh the accomplice's testimony with care.'").

11  Here, the jury was aware of the plea agreements received by both the Robles brothers,
12 defense counsel cross-examined the Robles brothers thoroughly concerning the benefits they
13 received by negotiating a plea and the jury was instructed to view accomplice testimony with
14 caution. [*See* Lodgment 2, Reporter's Appeal Transcript at 402:20-411:2; 687:1-695:13; *see*
15 *also* Lodgment 6 at p.13.]   Accordingly, it has not been shown that counsel's representation fell
16 below an objective standard of reasonableness as required by *Strickland.*  **IT IS THEREFORE**
17 **RECOMMENDED** that Petitioner's ineffective assistance of counsel claim based on defense
18 counsel's alleged failure to object to the People's motion *in limine* be **DENIED.**

19  **b.) Counsel's Alleged Failure to Preclude The Use of The Robles Brothers'**
    **Statements to Police at Trial**
20
    Petitioner argues defense counsel's failure to exclude the Robles brothers' allegedly
21
coerced statements to police prejudiced his defense "by shifting the blame upon the Petitioner
22
solely to prosecute Berryman as the sole perpetrator." [Traverse, Doc. No. 16 at 7.]   A review
23
of the record indicates Petitioner cannot show sufficient prejudice under *Strickland v.*
24
*Washington*, 466 U.S. 668, (1984).  To show prejudice, "a defendant must show that there is a
25
reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
26
would have been different." *Id.* at 694.
27
    The Court has reviewed the witness testimony and evidence presented at trial.  Taking
28

1  into account the totality of the evidence presented, Petitioner has not been shown the verdict
2  against him would have been different if the Robles brothers' initial statements to Officer
3  Cuevas had been excluded. Even if one were to assume Petitioner's attorney was able to
4  preclude Officer Cuevas from discussing the Robles brothers' initial statements to her, it is still
5  unreasonable to conclude in light of the additional evidence presented that the outcome of the
6  trial would have been different. Both Ernesto and Cesar Robles took the stand and testifies at
7  trial giving first hand accounts of the kidnapping and assault. Therefore, the Robles brothers'
8  initial statements to police were not a necessity for the People's presentation of evidence at trial.
9  In fact, Petitioner's counsel used the Robles brothers' statements to police on cross-examination
10 to undermine their credibility. [*See* Lodgment 2, Reporter's Appeal Transcript at 507-508, 696.]
11 In addition, the jury heard corroborating testimony from eye-witness Jessica Martinez who
12 volunteered information about the beating and kidnapping of Steven Medina to the police as well
13 as supporting testimony from police investigators and acquaintances of the Robles brothers and
14 Petitioner. In light of such evidence, it cannot be said that but for the introduction of the Robles
15 brothers' statements to Officer Cuevas at trial, Petitioner would not have been found guilty.
16 Because Petitioner cannot demonstrate the requisite prejudice under *Strickland*, **IT IS**
17 **THEREFORE RECOMMENDED** Petitioner's ineffective assistance of counsel claim based
18 on defense counsel's alleged failure to exclude the Robles brothers' initial statements to police
19 be **DENIED**. *See Strickland*, 466 U.S. at 697 (The factors need not be addressed in any
20 particular order; if an issue can be "disposed on ground of lack of sufficient prejudice, [there is]
21 no need to turn to counsel's performance.")
22 **B. Claim Six - Due Process Violation For Failure To *Sua Sponte* Instruct On Accomplice**
23 **Testimony**
24      **1. Petitioner's Arguments**
25      Petitioner contends his due process rights under the Fourteenth Amendment were
26 violated when the trial court failed to *sua sponte* instruct the jury regarding accomplice
27 testimony as to prosecution witnesses Jessica Martinez, Ernesto Robles and Cesar Robles.
28 Petitioner argues, Ms. Martinez and the Robles brothers were accomplices as a matter of law and

their testimony was insufficiently corroborated in violation of California state law.  [Petition, Doc. 1 at 53; Traverse, Doc No. 16-2 at 2.]

**2.    Respondent's Opposition**

Respondent argues Petitioner's claim, which is based on the state trial court's failure to provide a jury instruction, is a question of state law not cognizable in habeas corpus review. Additionally, Respondent argues the trial court's failure to give an accomplice instruction does not rise to the level of a due process violation because the error did not have an injurious effect on the jury verdict in light of the other evidence presented by the prosecution.  [Resp. Motion, Doc. No. 14-1 at 24:19-23.]

***3.  Clearly Established Federal Law - Estelle v. McGuire,* 502 U.S. 62 (1991)**

Challenges to state jury instructions generally do not concern constitutional issues that can be addressed on habeas review.  *See Estelle v. McGuire,* 502 U.S. 62, 71-72; *Laboa v. Calderon,* 224 F.3d 972, 979 (9th Cir. 2000).  However, an error with respect to jury instructions may constitute a violation of due process where the error so infects the trial the resulting conviction violates due process.  *Cupp v. Naughten*, 414 U.S. 141 (1973); *Middleton v. McNeil,* 541 U.S. 433 (2004); *Hayes v. Woodford*, 301 F.3d 1054, 1086 n. 38 (9th Cir. 2002). Specifically, to demonstrate an instructional error rises to a level that violates due process, Petitioner must show the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Hanna v. Riveland*, 87 F.3d 1034, 1039 (9th Cir. 1996).  Moreover, where the alleged error is the failure to give an instruction, the burden on the Petitioner is "especially heavy" *Henderson v. Kibbe*, 41 U.S. 145 (1977).

In addition to the general principle which prohibits federal habeas corpus review of alleged errors in state jury instructions, the federal Constitution does not require corroboration of accomplice testimony to sustain a conviction. *United States v. Augenblick*, 393 U.S. 348 (1969); *United States v. Necoechea*, 986 F.2d 1273, 1282 (9th Cir.1993); *see also United States v. Lopez*, 803 F.2d 969, 973 (9th Cir. 1986).  To the extent accomplice testimony instructions are required under California Penal Code section 1111, that requirement imposes a standard higher than that

1  of the federal Constitution.  Consequently, the failure to provide a jury instruction required only
2  by state law does not concern a federal right unless the accomplice testimony is "incredible or
3  insubstantial on its face" *United States v. Necochea*, 986 F.2d 1273, 1282 (9th Cir. 1993), which
4  is not true in this case.

5      4. **The California Court of Appeal's Decision Was Not Contrary to Clearly**
6  **Established Federal Law, Nor an Unreasonable Application of Federal Law**

7      Petitioner is not entitled to habeas relief on this claim. Claim six ultimately centers on
8  alleged errors in state jury instructions, and Petitioner has not demonstrated his trial was
9  fundamentally unfair due to: (1) the lack of an accomplice jury instruction as to Martinez and
10 Ernesto Robles, or (2) the failure of the trial court to instruct the jury that Cesar Robles' was an
11 accomplice as a matter of law.

12     In the instant matter, the California Court of Appeal disagreed with Petitioner that
13 Martinez and Ernesto Robles were accomplices as a matter of law.  Accordingly, the appellate
14 court found accomplice instructions unnecessary as to those prosecution witnesses. [*See*
15 Lodgment No. 6, October 30, 2006 Court of Appeal Opinion at pp.10-12.]  The appellate court
16 did find, however, the trial court erred when it failed to instruct the jury that Cesar Robles was an
17 accomplice as a matter of law.  [*Id*. at 12.]  Yet, the appellate court found the error to be
18 harmless because other independent evidence adequately corroborated the testimony of Martinez
19 and the Robles brothers.  [*Id*. at 15-17.]

20     After a review of the trial record as well as the appellate court's decision, this Court finds
21 the state appellate court's determination that any instructional error at Petitioner's trial was
22 harmless was not unreasonable.  Petitioner has not shown the trial court's jury instruction error
23 had a substantial or injurious effect in determining the jury's verdict.  The jury did receive
24 standard accomplice instructions to consider with respect to Cesar Robles.  Moreover, the
25 testimony given by both Robles brothers as well as Jessica Martinez was not incredible or
26 insubstantial in that it corresponded with other evidence connecting Petitioner with the
27 kidnapping, assault and murder of Steven Medina. [*See* Lodgment 2, Reporter's Appeal
28 Transcript at 907-911; 921-924; 928-941; 1084–1096.]  Accordingly, in the context of the trial as

a whole, the state appellate court's denial of Petitioner's instructional error claim is not contrary to or an unreasonable application of federal law, nor is it based on an unreasonable application of the facts of this case.  **IT IS THEREFORE RECOMMENDED** that Petitioner's claim of instructional error be **DENIED**.

## VI.
## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** the Court issue an Order **DENYING** Petitioner's Petition for Writ of Habeas Corpus with prejudice.

**IT IS ORDERED** that no later than **March 22, 2011** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **April 12, 2011.** The parties are advised that failure to file objections within the specified time may result in a waiver of the right to raise those objections on appeal of the Court's order. See *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); see also *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: March 1, 2011

_____
Hon.  William McCurine, Jr.
U.S. Magistrate Judge
United States District Court